UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEYTRIA BURT-WALKER,

  Plaintiff,      Case No.
            Hon.

v

MUSKEGON HEIGHTS PUBLIC
SCHOOL ACADEMY SYSTEM, a Michigan
Non-Profit Corporation, SQUARE ONE
STRATEGY GROUP, LLC, a Michigan
Limited Liability Company,

  Defendants.

James K. Fett (P39461)
Fett & Fields, P.C.
407 N. Main St., 2nd Floor
Ann Arbor, MI  48104
734-954-0100
Fax: 734-954-0762
jim@fettlaw.com
Attorneys for Plaintiff

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff Keytria Burt-Walker, through her counsel, Fett & Fields, P.C., states the following claims against Defendants:

## NATURE OF CLAIM

1.      This is an action brought for race and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.*, and Title IX of the Education Amendments of 1972, *20 U.S.C. § 1681 et seq.*

## JURISDICTION AND PARTIES

2.      Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1331.

3.      The events giving rise to this cause of action occurred in the Western District of Michigan.

4.      The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

5.      Plaintiff Keytria Burt-Walker ("Plaintiff") is a Black female who was employed as an Assistant Principal by Defendants and resides in Muskegon, Michigan.

6.      Defendant Muskegon Heights Public School Academy System ("MHPSA" or "Defendant") is a Michigan Non-Profit Corporation operating a public school academy in Muskegon Heights, Michigan, Muskegon County.

7.    Defendant Square One Strategy Group, LLC ("Square One" or "Defendant") is a Michigan Limited Liability Company located in Oakland County, Michigan that contracted with MHPSA beginning December 5, 2023 to manage and operate the school district.

8.    At all relevant times, MHPSA and Square One jointly employed Plaintiff and acted as agents of one another in taking the adverse employment actions described herein.

9.    Plaintiff received an EEOC Right to Sue Letter against both Defendants on February 5, 2026.

## FACTS

10.    Plaintiff Keytria Burt-Walker is a fifty-year-old Black female who first began working in the Muskegon Heights Public School Academy System ("MHPSA") district in 1999.

11.    Plaintiff left the district in 2013 and returned in 2018 as a Dean of Students, serving in that role until 2022.

12.    In July 2023, Plaintiff signed an offer letter and contract with the district accepting a promotion to the position of Assistant Principal. At the time of signing, the district was without a management company; the contract was with the district itself.

3

13.     In August 2023, all district staff transitioned to Edustaff as their nominal employer of record for payroll and benefits purposes.

14.     On December 5, 2023, the MHPSA Board of Education entered into a management contract with Defendant Square One Strategy Group, LLC ("Square One") to oversee the district.

15.     The contract did not give Square One full control; employee contracts remained in effect and unchanged.

16.     On December 18, 2023, Michael Horn, a male Principal Coach employed by Square One, began making race and sex-based discriminatory comments toward Plaintiff in the presence of her Principal, Shelley Miller, and Superintendent Redell Holmes.

17.     Mr. Horn excluded Plaintiff from professional meetings she was required to attend, while simultaneously requiring her to provide information for those same meetings.

18.     Mr. Horn attempted to pressure Principal Miller into writing Plaintiff up and tried to convince Miller to exclude Plaintiff from meetings without justification.

19.     Mr. Horn called Plaintiff "ghetto" and "emotional" to Principal Miller and Superintendent Holmes—racially and sexually charged characterizations that had no basis in fact and that Mr. Horn did not apply to male colleagues.

20.    Mr. Horn called other women in the workplace "stanky" and "fat," made derogatory gestures about women's weight, and told colleagues that women's appearances made him sick.

21.    Mr. Horn went behind Plaintiff's back and questioned staff about her management abilities and personality, instructing them to keep these conversations secret, and deliberately tarnished her professional reputation within the school.

22.    Kenya Crockett, the State Compliance Director, approached Plaintiff and told her that because Plaintiff was a "strong Black leader," she wanted to warn Plaintiff that Mr. Horn was painting a negative picture of her to the company and misrepresenting her conduct.

23.    Plaintiff reported all of Mr. Horn's discriminatory and harassing conduct to Principal Miller and Superintendent Holmes on December 18 and December 19, 2023, and again on January 11, 2024.

24.    Superintendent Holmes informed Square One of Mr. Horn's conduct but Square One took no corrective action.

25.    Because the conduct continued, Plaintiff reported it to HR Director Patricia Kincaid on January 24, 2024.

26.    Despite her repeated complaints, no investigation was conducted, no witnesses were contacted or questioned, and no remedial action was taken.

27. On January 25, 2024—less than six weeks after Plaintiff first reported Mr. Horn's conduct—HR Director Kincaid informed Plaintiff that her job title was being changed from Assistant Principal to Behavioral Intervention Specialist.

28. Plaintiff immediately raised her objection, explaining that she was an Assistant Principal, not a Dean of Students, and that her title should not be affected by any reclassification of Dean positions.

29. This change represented a two-step reclassification downward in rank, responsibilities, and a decrease in compensation starting the next year.

30. Superintendent Holmes advised Square One that the Assistant Principal and Dean of Students positions were not comparable and that Plaintiff's title should remain unchanged.

31. Notwithstanding the Superintendent's assessment, Square One proceeded with the reclassification.

32. Plaintiff raised her concern that the title change was retaliation for her reports about Mr. Horn.

33. On January 27, 2024, Plaintiff met with Shannon Smith (Square One's CEO), Dr. Belinda Hicks (Square One), and several other Square One employees.

34. Plaintiff detailed Mr. Horn's harassing conduct and expressed that the title change was retaliatory.

35. Principal Miller attended and corroborated Plaintiff's complaints.

36.  During the meeting, Dr. Hicks acknowledged that she had received negative information about Plaintiff from Mr. Horn and had been relying on that information.

37.  She stated that Mr. Horn was "old school" and that she chose to overlook some of his remarks.

38.  After the formal meeting concluded, Dr. Hicks pulled Plaintiff aside privately and raised baseless rumors that Plaintiff had obtained her Assistant Principal position through a personal relationship with Superintendent Holmes.

39.  Plaintiff denied these allegations and told Dr. Hicks that her line of questioning was inappropriate.

40.  Plaintiff also learned at this time that she had been removed from a professional development trip to Tennessee.

41.  Dr. Hicks offered no credible justification for the removal.

42.  For over a month following her initial reports, Plaintiff sought clarification on her new contract and the outcome of her complaints, writing letters, speaking at board meetings, and appearing at staff meetings.

43.  Square One failed to respond to any of her requests.

44.  On February 13, 2024, Plaintiff went to the HR office to submit a formal written discrimination complaint.

45. No Square One representatives were present at the district, so Plaintiff entrusted the complaint to Superintendent Holmes.

46. On February 16, 2024, Plaintiff sent an email to HR Director Kincaid expressly stating that her demotion was retaliation for reporting Mr. Horn.

47. Instead of investigating, Square One responded by sending Plaintiff a new contract with a limited signing window.

48. On February 27, 2024, Square One's attorney, E.B. Allen, sent Plaintiff a threatening letter stating that Square One had investigated Mr. Horn's conduct to its satisfaction, that the matter was closed, and that "seeking redress for grievances outside of Square One management is improper."

49. The letter instructed Plaintiff not to speak on the matter again.

50. No witnesses had been contacted or questioned as part of any investigation.

51. On February 28, 2024, HR Director Kincaid held a staff meeting at the school.

52. When Plaintiff and other staff raised questions about the new contracts, Ms. Kincaid was openly dismissive and hostile toward Plaintiff in front of the entire staff.

53. Staff members subsequently wrote letters to Square One expressing concern about Ms. Kincaid's treatment of Plaintiff.

54.     Following that meeting, Plaintiff filed a complaint against HR Director Kincaid for creating a hostile work environment.

55.     On February 29, 2024, Plaintiff signed her contract, writing on it that she was doing so under protest and was not waiving her legal rights to challenge the title change.

56.     She submitted the signed contract through the principal as instructed.

57.     All building contracts were collected together on Monday, March 1, 2024.

58.     Sean Mead, a white male instructor in the district, also objected to his contract with Square One and refused to sign it.

59.     He was not given a signing deadline.

60.     He received no threatening letter from Square One's attorney.

61.     He was not terminated.

62.     Mr. Mead worked the entire school year without signing his contract and has provided a written statement confirming these facts.

63.     Plaintiff, a Black female, was the only employee who was given a signing deadline, the only employee to receive a threatening letter from Square One's attorney regarding her contract, and the only employee terminated for the stated reason of refusing to sign.

64.    On March 1, 2024, Plaintiff met with Dr. Hicks, board president Leslie Slater, Superintendent Holmes, and board member Ms. Ross.

65.    Plaintiff again raised the harassment, the hostile work environment, and the retaliatory demotion.

66.    During the meeting, Dr. Hicks stated in an intimidating tone that Plaintiff was an at-will employee.

67.    Board member Ross advised Plaintiff to document everything going forward.

68.    On March 5, 2024, HR Director Kincaid arrived at Plaintiff's office with security.

69.    She handed Plaintiff a termination letter and told her she had fifteen minutes to gather her belongings and leave the premises.

70.    The letter stated Plaintiff was being terminated for refusing to sign her contract.

71.    Plaintiff told Ms. Kincaid she had signed the contract.

72.    Ms. Kincaid refused to accept Plaintiff's explanation, stating that Plaintiff's notation that she was signing "under protest" constituted a refusal to sign.

73.    Ms. Kincaid directed security to give Plaintiff only five minutes to leave.

74. Plaintiff was walked out of the school building by security in front of staff, parents, and her students, causing her profound humiliation and distress.

75. On March 6, 2024—the day after her termination—Defendants posted Plaintiff's position publicly, in violation of the applicable ten-day waiting period.

76. Plaintiff later confirmed with Edustaff that any disciplinary action or termination letter for a district employee would come from Edustaff, not from Square One.

77. The termination letter Plaintiff received was issued by Square One in violation of this understanding.

78. Defendants' stated reason for Plaintiff's termination—that she refused to sign her contract—was false.

79. Plaintiff signed her contract.

80. The actual reasons for Plaintiff's demotion and termination were her race, her sex, and her repeated protected complaints about race and sex-based discrimination and harassment.

81. As a direct result of Defendants' actions, Plaintiff lost her position as Assistant Principal, was forced to abandon her administrator certification program through the Michigan Department of Education in which she had enrolled at a cost of $800 per five-week session, and has suffered significant emotional distress for which she has sought treatment from a psychologist and psychiatrist.

## COUNT I
## SEX DISCRIMINATION
## (42 U.S.C. § 2000e-2)

82.    Plaintiff incorporates by reference the preceding paragraphs.

83.    Plaintiff is a female.

84.    At all times Plaintiff was a highly performing employee.

85.    Defendant subjected Plaintiff to adverse actions, including, *inter alia*, demoting Plaintiff from her position as Assistant Principal, denying her professional development opportunities, and terminating her employment.

86.    Defendant undertook the aforementioned actions because of Plaintiff's sex.

87.    Defendant's actions on this basis violate the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

88.    As a proximate result of Defendant's unlawful conduct against Plaintiff as described above, Plaintiff has sustained, and will continue to sustain, injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

**WHEREFORE** Plaintiff requests that this Court enter judgment against Defendant providing for:

a.    Economic damages;

b.      Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c.      Costs, interest and reasonable attorney fees as provided by 42 U.S.C. § 1988;

d.      Punitive damages; and

e.      Such other equitable relief as the Court deems just.

## COUNT II
## RACE DISCRIMINATION
## (42 U.S.C. § 2000e-2)

89.    Plaintiff incorporates by reference the preceding paragraphs.

90.    Plaintiff is a Black female.

91.    At all times Plaintiff was a highly performing employee.

92.    Defendant subjected Plaintiff to adverse actions, including, inter alia, demoting Plaintiff from her position as Assistant Principal, denying her professional development opportunities, and terminating her employment.

93.    Defendant undertook the aforementioned actions because of Plaintiff's race.

94.    Defendant's actions on this basis violate the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

13

95.    As a proximate result of Defendant's unlawful conduct against Plaintiff as described above, Plaintiff has sustained, and will continue to sustain, injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

**WHEREFORE** Plaintiff requests that this Court enter judgment against Defendant providing for:

a.    Economic damages;

b.    Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c.    Costs, interest and reasonable attorney fees as provided by 42 U.S.C. § 1988;

d.    Punitive damages; and

e.    Such other equitable relief as the Court deems just.

**COUNT III**
**RETALIATION**
**(42 U.S.C. § 2000e-3)**

96.    Plaintiff incorporates by reference the preceding paragraphs.

97.    Plaintiff engaged in protected activity by reporting and opposing violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3,

14

including reporting race and sex-based harassment and discrimination to management, Human Resources, and the Board of Education.

98. At all times Plaintiff was a highly performing employee.

99. Defendant subjected Plaintiff to adverse actions, including, inter alia, demoting Plaintiff from her position as Assistant Principal, removing her from professional development opportunities, issuing threatening communications through legal counsel designed to silence her, and terminating her employment.

100. Defendant undertook the aforementioned actions because Plaintiff engaged in protected activity.

101. Defendant's actions on this basis violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

102. As a proximate result of Defendant's unlawful conduct against Plaintiff as described above, Plaintiff has sustained, and will continue to sustain, injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

**WHEREFORE** Plaintiff requests that this Court enter judgment against Defendant providing for:

a. Economic damages;

b. Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c. Costs, interest and reasonable attorney fees as provided by 42 U.S.C. § 1988;

d. Punitive damages; and

e. Such other equitable relief as the Court deems just.

**COUNT IV**
**SEX DISCRIMINATION**
**(20 U.S.C. § 1681)**

103. Plaintiff incorporates by reference the preceding paragraphs.

104. Plaintiff is a female.

105. Defendant Muskegon Heights Public School Academy is a recipient of federal financial assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

106. At all times Plaintiff was a highly performing employee.

107. Defendant subjected Plaintiff to adverse actions, including, inter alia, demoting Plaintiff from her position as Assistant Principal, denying her professional development opportunities, and terminating her employment.

108. Defendant undertook the aforementioned actions because of Plaintiff's sex.

109.   Defendant's actions on this basis violate Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

110.   As a proximate result of Defendant's unlawful conduct against Plaintiff as described above, Plaintiff has sustained, and will continue to sustain, injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

**WHEREFORE** Plaintiff requests that this Court enter judgment against Defendant providing for:

a.    Economic damages;

b.    Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c.    Costs, interest and reasonable attorney fees;

d.    Such other equitable relief as the Court deems just.

**COUNT V**
**RETALIATION**
**(20 U.S.C. § 1681)**

111.   Plaintiff incorporates by reference the preceding paragraphs.

112.   Plaintiff engaged in protected activity by reporting and opposing sex discrimination in violation of Title IX of the Education Amendments of 1972, 20

U.S.C. § 1681 et seq., including reporting sex-based harassment and discrimination to management, Human Resources, and the Board of Education.

113.    At all times Plaintiff was a highly performing employee.

114.    Defendant subjected Plaintiff to adverse actions, including, inter alia, demoting Plaintiff from her position as Assistant Principal, removing her from professional development opportunities, issuing threatening communications through legal counsel designed to silence her, and terminating her employment.

115.    Defendant undertook the aforementioned actions because Plaintiff engaged in protected activity.

116.    Defendant's actions on this basis violate Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

117.    As a proximate result of Defendant's unlawful conduct against Plaintiff as described above, Plaintiff has sustained, and will continue to sustain, injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

**WHEREFORE** Plaintiff requests that this Court enter judgment against Defendant providing for:

a.    Economic damages;

18

b.      Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c.      Costs, interest and reasonable attorney fees;

d.      Such other equitable relief as the Court deems just.

Respectfully submitted,

*/s/ James K. Fett*
By: James K. Fett (P39461)
Fett & Fields, P.C.
Dated:  May 5, 2026          Attorney for Plaintiff

## JURY DEMAND

Plaintiff, through her counsel, demands trial by jury in the above-captioned matter.

Respectfully submitted,

*/s/ James K. Fett*
By: James K. Fett (P39461)
Fett & Fields, P.C.
Dated:  May 5, 2026          Attorney for Plaintiff